UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS McADORY,

       Plaintiff,

                                CASE NO. 5:07-CV-13192
    v.                            JUDGE JOHN CORBETT O'MEARA
                                MAGISTRATE JUDGE PAUL KOMIVES

MICHAEL R. ENGELSGJERD,
et al.,

       Defendants.
                               /

## REPORT AND RECOMMENDATION ON DEFENDANTS CMS AND HUTCHINSON'S MOTION TO DISMISS (docket #25)

I.    RECOMMENDATION: The Court should deny defendants CMS and Hutchinson's motion to dismiss for lack of exhaustion (docket #25).

II.    REPORT:

A.    *Procedural Background*

Plaintiff Marcus McAdory is a state prisoner who, at the times relevant to this complaint, was incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan. Plaintiff commenced this action on July 12, 2007, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Michigan. On August 1, 2007, the case was transferred to this Court. On January 6, 2009, plaintiff filed an amended complaint. Named as defendants are Dr. Michael Engelsgjerd, a doctor at St. Louis Correctional Facility; Correctional Medical Services (CMS); Dr. George Pramstallar, Director of Bureau of Health Services for the Michigan Department of Corrections; and Dr. Craig Hutchinson, Director of CMS. Plaintiff alleges

1

that defendant Engelsgjerd improperly diagnosed and treated a skin condition, which either was a symptom of or developed into a cancerous tumor in his lung. He was eventually diagnosed with malignant Hodgkins lymphoma. He also alleges that his inadequate treatment resulted from the actions or policies of defendants CMS, Pramstallar, and CMS. Plaintiff alleges that defendants' actions amounted constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

On April 8, 2009, defendants CMS and Hutchinson filed this motion to dismiss. Defendants argue that plaintiff failed to exhaust his administrative remedies with respect to his claims against them, as required by 42 U.S.C. § 1997e(a). On May 12, 2009, I entered an Order requiring plaintiff to respond to the motion by June 30, 2009. As of the date of this Order, plaintiff has not filed a response to the motion.[1]

B.    *Legal Standard*

Pursuant to the Prison Litigation Reform Act (PLRA), inmates challenging their conditions of confinement must exhaust their administrative remedies before pursuing a federal civil rights action. Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

---

[1] On January 20, 2009, I entered an Order conditionally granting plaintiff's motion for counsel, contingent upon the Court locating *pro bono* counsel willing to accept plaintiff's case. Despite several attempts by the Court's *pro bono* program administrator, no willing counsel has yet been found.

2

In order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's "procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 126 S. Ct. 2378, 2384 (2006). As the Supreme Court recently explained, the scope of a prisoner's obligation to exhaust is defined not by the PLRA itself, but by the prison's grievance procedures:

> [T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 127 S. Ct. 910, 922 (2007) (citations omitted).

Michigan provides for a three-step grievance procedure. A Step I grievance is directed to the Step I Grievance Coordinator at the facility in which the prisoner is incarcerated. If the prisoner is dissatisfied with the Step I response, he may file a Step II appeal to the Warden of the facility. If the prisoner is again dissatisfied with the Step III response, he may file a Step III appeal to the Director of the Department of Corrections or her designee. *See* MICH. DEP'T OF CORRECTIONS POLICY DIRECTIVE 3.02.130(X), (DD), (HH) (effective Dec. 19, 2003).[2] The Policy Directive provides that a prisoner must include "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.*, § (T).

C. *Analysis*

---

[2]The current version of the Policy Directive had been amended in respects not relevant here, and some paragraphs have been re-lettered. Throughout this Report, I cite to the Policy Directive effective December 19, 2003, in effect at the time plaintiff's claims accrued.

Defendants CMS and Hutchinson assert that plaintiff filed only two grievances relating to his skin condition while incarcerated at the St. Louis correctional facility, and contend that neither is sufficient to demonstrate exhaustion of plaintiff's claims against them. In Grievance SLF-06-02-00319-12d1, plaintiff filed a Step I grievance on February 13, 2006, requesting a medical transfer for treatment of his skin condition. The grievance alleged that the treatment he had been given was ineffective and that Dr. Engelsgjerd had informed him that there was nothing more that could be done and that medical services had refused to allow him to see an outside dermatologist. This grievance was appealed through Step III, and was denied on the merits at each step. *See* Def.s' Br., Ex. C. In Grievance SLF-06-06-1221-12d, plaintiff filed a Step I grievance on July 1, 2006. In this grievance, he provided a detailed history of the treatment of his skin condition from February 2005 through March 2006, including the ultimate diagnosis of his lung tumor and Hodgkins lymphoma. The grievance was denied on the merits at Step I. However, at Steps II and III, the grievance was denied as untimely because it "discusse[d] care provided in February and March, 2005." *See id.*, Ex. D. Defendants contend that the first grievance does not constitute proper exhaustion because (a) they are not named in the grievance, and (b) it relates only to his skin condition, not his tumor and lymphoma. Defendants contend that the second grievance does not constitute proper exhaustion again because they are not named in the grievance, and also because the grievance was denied as untimely. The Court should reject these arguments, and conclude that plaintiff has properly exhausted.

With respect to plaintiff's failure to name defendant CMS or defendant Hutchinson in either grievance, the Court should conclude that this failure does not render plaintiff's claims against them unexhausted. While it is true that, to properly exhaust, a prisoner must follow the prison's

4

procedural requirements and that the MDOC policy requires a grievant to name the officials involved, in the medical context the Michigan federal courts have repeatedly held that a grievance naming "health care" is sufficient to exhaust as to CMS because such a grievance provides sufficient notice to prison officials of the nature of the prisoner's complaint, for two reasons. First, because CMS can act only through its doctors, a grievance naming the doctor is "sufficient to satisfy the exhaustion requirement for purposes of both [the doctor] and CMS." *Owens v. Correctional Medical Servs., Inc.*, No. 1:07-cv-934, 2008 WL 4534424, at *5 (W.D. Mich. Sept. 30, 2008); *see also*, *Kelley v. DeMasi*, No. 07-13236, 2008 WL 4298475, at *3 (E.D. Mich. Sept. 18, 2008) (Roberts, J., adopting Report of Whalen, M.J.); *Beedle v. DeMasi*, No. 05-70430, 2006 WL 2700753, at *3 (E.D. Mich. Sept. 18, 2006) (Tarnow, J., adopting Report of Morgan, M.J.). Second, "where a prisoner is sending kites to health services requesting medical care, it would be difficult if not impossible for the prisoner to know the specific health care providers who are responsible for the denial of treatment." *Owens*, 2008 WL 4534425, at *6; *see also*, *Contor v. Caruso*, No. 1:07-cv-303, 2008 WL 878665, at *7 (W.D. Mich. Mar. 28, 2008); *cf. Shoucair v. Warren*, No. 07-12964, 2008 WL 2033714, at *6-*7 (E.D. Mich. May 9, 2008) (Taylor, J., adopting Report of Hluchaniuk, M.J.). Accordingly, the Court should conclude that plaintiff's naming of Dr. Engelsgjerd in his grievance was sufficient to exhaust his claims against defendants CMS and Hutchinson.

Likewise, the Court should reject defendants' argument that plaintiff's first grievance did not exhaust his claims because it relates to a different condition than the one set forth in his complaint. A fair reading of plaintiff's complaint belies this argument. Plaintiff's complaint, as does his grievance, focuses on defendants' alleged failure to properly treat his skin condition. Plaintiff alleges that it was ultimately determined that "his untreated serious skin condition was the

5

direct and proximate result of his cancer," Compl., ¶ 10, and that therefore proper treatment of his skin condition would have lead to the discovery of his cancer. In both his first grievance and complaint, the gravamen of plaintiff's claim is that defendants failed to properly treat his skin condition. That plaintiff has more fully alleged the consequences of that failure to treat does not compel the conclusion that plaintiff is raising a different claim here than he did in his grievance. In both cases, plaintiff's claim is that defendants failed to properly diagnose and treat his skin condition. Accordingly, the Court should conclude that plaintiff's first grievance fully exhausts his claims against defendants CMS and Hutchinson.

Because plaintiff's first grievance is sufficient to demonstrate exhaustion, the Court need not consider whether the second grievance likewise constitutes exhaustion of his claims. For completeness, however, I note that plaintiff's second grievance also fully exhausts his claims against defendants CMS and Hutchinson. Defendants argue that plaintiff's second grievance is insufficient because it was untimely.[3] In rejecting the grievance at Steps II and III, the reviewers noted that the grievance was untimely because it referenced events occurring in February and March 2005, but was not filed until July 1, 2006. However, the grievance asserts a complaint against an entire course of treatment for a chronic condition, which included events through May 2006. In cases involving a failure to treat such a chronic condition, the courts have held that prison officials may not parse for timeliness each individual treatment decision. *See Ellis v. Vadlamudi*, 568 F. Supp. 2d 778, 790-91 (E.D. Mich. 2008) (Lawson, J., adopting Report of Binder, M.J.) (citing cases). As Judge Lawson explained in *Ellis*,

---

[3]Defendants also contend that the second grievance is insufficient because it fails to name them. This argument fails for the same reasons it failed with respect to the first grievance.

6

> For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate. The seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition-and the resulting pain suffered by the prisoner that equates to the infliction of punishment-may not become manifest until then as well. Such a condition is properly identified as "ongoing," and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it.

*Ellis*, 568 F. Supp. 2d at 783-84; *see also*, *Ketzner v. Douglas*, No. 08-CV-13299, 2009 WL 1655004, at *12-*13 (E.D. Mich. June 11, 2009) (Cohn, J., adopting Report of Hluchaniuk, M.J.); *Hoye v. Nelson*, No. 1:07-cv-110, 2007 WL 5062014, at *7 (W.D. Mich. Oct. 18, 2007). Thus, plaintiff's second grievance also exhausts his claims against defendants CMS and Hutchinson.

D. *Conclusion*

In short, each of plaintiff's grievances is sufficient by itself to exhaust his claims against defendants CMS and Hutchinson. Accordingly, the Court should deny defendants' motion to dismiss.

III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 2/11/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 11, 2010.
>
> s/Eddrey Butts
> Case Manager